IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MARYLAND, NORTHERN DIVISION

|  |  |  |
|---|---|---|
| MARK CERRATO, on behalf of himself and others similarly situated | * | |
| | * | |
| | * | |
| Plaintiffs, | * | |
| | * | |
| v. | * | CIVIL NO.: WDQ-13-2774 |
| | * | |
| ALLIANCE MATERIAL HANDLING, INC., *et al.* | * | |
| | * | |
| Defendants. | * | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## MEMORANDUM OPINION

Mark Cerrato sued Alliance Material Handling, Inc. ("Alliance") and Thomas Albero (collectively "the Defendants"), for violations of the Fair Labor Standards Act ("FLSA"),[1] the Maryland Wage Payment and Collection Law ("MWPCL"),[2] and the Maryland Wage and Hour Law ("MWHL").[3]  Pending is a joint motion for final approval of a collective action settlement.  A fairness hearing was held on Thursday, December 11, 2014, at 11:00 am.  For the following reasons, the Court will grant the motion.

---

[1] 29 U.S.C. §§ 201, *et seq.*

[2] Md. Code Ann., Lab. & Empl. §§ 3-501, *et seq.*

[3] Md. Code Ann., Lab. & Empl. §§ 3-401, *et seq.*

I.   Background

   A. Facts

   On September 30, 2013, Cerrato, on behalf of himself and
all others similarly situated, sued the Defendants to recover
unpaid overtime.  *See* ECF No. 1.  Cerrato alleges that he worked
for Alliance from November 2005 to August 2013 as a fork lift
technician.  ECF No. 1 ¶ 9.  Cerrato alleges that he, and other
similarly situated employees, regularly worked for more than 40
hours per week, and Alliance did not properly pay them time and
a half for all overtime hours they worked.  *See* ECF No. 1 ¶¶ 11-
16.  On October 15, 2013, the Defendants answered the complaint
and denied all material allegations.  *See* ECF No. 7.

   On December 6, 2013, Cerrato moved for conditional
collective action certification and court-facilitated notice.
ECF No. 15.  On January 23, 2014, the parties held a settlement
conference with Magistrate Judge Susan K. Gauvey.  On April 25,
2014, the parties filed a joint motion for FLSA settlement
approval.  ECF No. 22.  On April 30, 2014, the Court denied the
motion for settlement approval until other plaintiffs had opted
into the class.  ECF Nos. 25-26.  After notice, eight persons
opted into the action.  ECF No. 50 at 5.  On June 17, 2014, the
parties entered into an amended settlement agreement.  ECF No.
38-1.

On October 17, 2014, the parties filed a joint motion for a fairness hearing and final settlement approval.  ECF No. 38.  On October 21, 2014, the Court ordered the parties to revise the notice for the fairness hearing to inform opt-in Plaintiffs of the possibility that their claims could be dismissed with prejudice at the fairness hearing.  ECF No. 41.  The Court also requested supplemental briefing on the fairness of the settlement and the reasonableness of attorneys' fees.  *Id.*

On November 5, 2014, the parties provided the Court with the revised notice of the hearing for the opt-in Plaintiffs, and the Court scheduled a fairness hearing.  ECF Nos. 44-45.  On November 24, 2014, the parties filed a joint supplemental memorandum in support of final settlement approval and attorneys' fees.  ECF No. 50.

On December 11, 2014, the Court held a fairness hearing. None of the opt-in Plaintiffs attended the hearing, and the Plaintiffs' counsel indicated that there have been no objections to the settlement.  The Court requested that the Plaintiffs' counsel clarify how notice of the hearing was provided to the opt-in Plaintiffs.  On December 12, 2014, the Plaintiffs' counsel submitted a letter stating that the eight opt-in plaintiffs received notice of the hearing through regular mail,

and seven received additional notice through email.[4]   ECF No. 53.

    B. The Settlement Agreement

    Through settlement negotiations facilitated by Judge
Gauvey, the parties reached the following agreement.

    In exchange for dismissing the action with prejudice, the
Defendants agreed to pay each of the Plaintiffs the "full and
maximum relief" under the FLSA that the Plaintiffs would have
received had they proven their claims.  *See* ECF No. 50 at 1-2.
The Defendants provided the payroll records for all the
Plaintiffs so that their overtime could be calculated.  *See* ECF
No. 50 at 5-6; ECF No. 38-1 at 9-11.  Based on the calculations,
the Defendants agreed to pay Cerrato and four of the opt-in
Plaintiffs.[5]  It was determined that no overtime was owed to the
other four opt-in Plaintiffs, and their claims would be
dismissed with prejudice unless they objected at the fairness
hearing.  *See* ECF No. 38 at 5.  The Defendants have not admitted
liability, and continue to maintain that all the Plaintiffs were
properly compensated for their work.  ECF No. 38-1 at 3-4.

---

[4] "The addresses and email addresses used were those provided by
the clients when they opted-in to the litigation."  ECF No. 53.

[5] After the payroll calculations, the Defendants agree to pay
Cerrato $10,000.

In addition to the overtime payments, Cerrato will receive $10,000 in liquidated damages,[6] and a $1,000 incentive award. *See* ECF No. 38 at 5.  The Settlement Agreement contains a general release provision.  See ECF No. 38-1 at 7-9.  The provision releases the Defendants from "any and all past, present or future claims, demands, rights, causes of action, judgments, executions, damages, liabilities, costs and expenses" by Cerrato or "his agents, successors, assigns, heirs, devisees, legatees, executors, administrators, [and] . . . representatives."  *Id*.

The Defendants also agreed to pay the Plaintiffs' counsel $42,302.89 in attorneys' fees.  ECF No. 38 at 7.  This amount would not be deducted from any of the Plaintiffs' awards, and would not increase regardless of additional work on the case performed by the Plaintiffs' counsel.  *See id*.

II.  Analysis

A. Fairness of the Settlement

Plaintiffs may maintain a collective action against their employer for violations of the FLSA under 29 U.S.C. § 216(b). *See, e.g.*, *Simmons v. United Morg. & Loan Inv., LLC*, 634 F.3d

---

[6] Each of the opt-in Plaintiffs with calculable unpaid overtime will also receive the full amount of liquidated damages permitted by the FLSA.  *See* ECF No. 38 at 4.

754, 758 (4th Cir. 2011); *Butler v. DirectSAT USA, LLC*, 876 F.

Supp. 2d 560, 565 (D. Md. 2012).  The provision provides that:

> An action . . . may be maintained against any employer
> . . . in any Federal or State court of competent
> jurisdiction by one or more employees for and on
> behalf of himself or themselves and other employees
> similarly situated.  No employee shall be a party
> plaintiff to any such action unless he gives his
> consent in writing to become such a party and such
> consent is filed in the court in which such action is
> brought.

29 U.S.C. § 216(b).  In a collective action under the FLSA,

unlike a class action under Rule 23,[7] potential plaintiffs must

opt-in by affirmatively notifying the Court of their intention

to become parties to the suit.  *See Simmons*, 634 F.3d at 758.  A

named plaintiff represents only himself until other similarly

situated employees opt-in to the suit.  *See id*.  In the absence

of any other plaintiffs opting-in, a named plaintiff's suit

becomes moot when his individual claim is satisfied.  *See*

*Genesis Healthcare Corp. v. Symczyk*, 133 S. Ct. 1523, 1529

(2013); *Cameron-Grant v. Maxim Healthcare Servs. Inc.*, 347 F.3d

1240, 1249 (11th Cir. 2003) (named plaintiff had no interest in

representing potential opt-in plaintiffs when named plaintiff's

claim was settled).

---

[7] Fed. R. Civ. Pro. 23.

Generally, the FLSA's provisions "are mandatory and generally are not subject to bargaining, waiver, or modification by contract of settlement." *Duprey v. Scotts Co.*, 2014 U.S. Dist. LEXIS 70889, at *4 (D. Md. May 23, 2014). Therefore, settlement agreements must be approved by the Department of Labor or the court.[8]  Courts will approve a settlement if there is a *bona fide* dispute between the parties, and the settlement is fair. *See Saman v. LBDP, Inc.*, 2013 U.S. Dist. LEXIS 83414, at *6-7 (D. Md. June 13, 2013). A court should reject the settlement if it is a "mere waiver of statutory rights brought about by an employer's overreaching." *Id.* (quoting *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1354 (11th Cir. 1982)).

1. Bona Fide Dispute

"In determining whether a *bona fide* dispute exists as to a Defendant's liability under the FLSA, [c]ourts examine the pleadings in the case, along with the representations and recitals in the proposed settlement agreement." *Amaya Amaya v. Young & Chang, Inc.*, 2014 U.S. Dist. LEXIS 99591, at *5 (D. Md. July 22, 2014). Here, the joint motion, memorandum, and supplemental memorandum, establish that a *bona fide* dispute exists.

---

[8] *See, e.g., Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1353 (11th Cir. 1982); *Lopez v. NTI, LLC*, 748 F. Supp. 2d 471, 476 (D. Md. 2010).

Under the FLSA, "no employer shall employ any of his employees . . . for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed." 29 U.S.C. § 207. If an employer violates § 207, he is liable for unpaid overtime and an equal amount of liquidated damages. 29 U.S.C. § 216.

The parties disagree whether the Defendants are liable under this statute. Although they do not detail the disputed factual allegations that support their arguments, the "Defendants contend that [the] Plaintiff and other Forklift Technicians are not entitled to any relief in connection with the Plaintiffs' claims. [The] Plaintiff maintains that during his employment with [the] Defendants he was not paid proper overtime . . . and the case can be established through the paystubs." ECF No. 50 at 6. Further, the Defendants "have raised affirmative defenses." *Id*. These facts are sufficient to establish a *bona fide* dispute. *See Amaya Amaya*, 2014 U.S. Dist. LEXIS 99591, at *5-6 ("The Joint Motion and Memorandum, as well as the previous filings, make clear that several FLSA issues are in *bona fide* dispute. Most importantly, the parties disagree about whether Ichiban is liable at all in light of 29

U.S.C. § 203(m), which provides wage offsets for Amaya's tips and meal credit.").

### 2. Fairness

In evaluating fairness and reasonableness, a court should consider, "(1) the extent of discovery that has taken place; (2) the stage of the proceedings, including the complexity, expense and likely duration of the litigation; (3) the absence of fraud or collusion in the settlement; (4) the experience of counsel who have represented the plaintiffs; (5) the opinions of [] counsel . . . ; and (6) the probability of plaintiffs' success on the merits and the amount of the settlement in relation to the potential recovery." *Saman*, 2013 U.S. Dist. LEXIS 83414, at *3 (quoting *Lomascolo v. Parsons Brinckerhoff, Inc.*, 2009 U.S. Dist. LEXIS 89136, at *10 (E.D. Va. Sept. 28, 2009)). "These factors are most likely to be satisfied where there is an 'assurance of an adversarial context' and the employee is 'represented by an attorney who can protect [his] rights under the statute.'" *Duprey v. Scotts Co.*, 2014 U.S. Dist. LEXIS 70889, at *7 (D. Md. May 23, 2014) (quoting *Lynn's Food Stores*, 679 F.2d at 1354).

Here, "the Parties vigorously prosecuted and defended the case." ECF No. 50 at 7. There has been "extensive" discovery, including initial disclosures, written discovery requests, and the exchange of documents. Further, there is a bona fide

dispute about whether the Plaintiffs can succeed on the merits,
and there is no evidence of fraud or collusion in the settlement
process.  In their joint motion, counsel for the parties
represent that this settlement is a fair and desired outcome for
the parties.  Each Plaintiff with calculable overtime is
receiving the "full and maximum relief [permitted] under the
FLSA."  ECF No. 50 at 1.  These facts support the fairness and
reasonableness of the settlement.

   In this case, the Settlement Agreement contains a general
release provision that affects Cerrato.  See ECF No. 38-1 at 7-
9.  The provision releases the Defendants from "any and all
past, present or future claims, demands, rights, causes of
action, judgments, executions, damages, liabilities, costs and
expenses" by Cerrato or "his agents, successors, assigns, heirs,
devisees, legatees, executors, administrators, [and] . . .
representatives."  *Id.*

   "Some courts have held that an overly broad release
provision can render an FLSA agreement unreasonable if the
release includes claims unrelated to those asserted in the
complaint."  *Saman*, 2013 U.S. Dist. LEXIS 83414, at *14; *see
also Moreno v. Regions Bank,* 729 F.Supp.2d 1346, 1352 (M.D. Fla.
2010) ("A pervasive release in an FLSA settlement confers an
uncompensated, unevaluated, and unfair benefit on the
employer.").  However, if the agreement  "compensates an

employee both for alleged violations of the FLSA and for other claims that are unrelated to the FLSA or comparable state wage-and-hour statutes, courts have approved broadly worded general release provisions."[9]

The general release clause is permissible in this case because Cerrato is receiving compensation in addition to his unpaid overtime. *See Saman*, 2013 U.S. Dist. LEXIS 83414, at *14.  The Settlement Agreement also awards Cerrato $10,000 in liquidated damages. *See Duprey*, 2014 U.S. Dist. LEXIS 70889, at *12-13 (general release clause did not render a settlement unfair when the plaintiff "was compensated for almost eighty percent of his back pay . . . plus an additional $2,250 in liquidated damages").

B. Attorneys' Fees

The settlement agreement includes $42,302.89 in attorneys' fees.  ECF No. 38 at 7.  The parties agreed that this amount would be paid by the Defendants *in addition to* the Plaintiffs' individual awards, and would not increase regardless of the

---

[9] *Saman*, 2013 U.S. Dist. LEXIS 83414, at *14; *Duprey*, 2014 U.S. Dist. LEXIS 70889, at *12-13 ("The Settlement Agreement contains a general release of claims beyond those specified in the Complaint, except for workers' compensation.  But, if the employee is compensated reasonably for the release executed, the settlement can be accepted, and I am not required to evaluate the reasonableness of the settlement as to the non-FLSA claims.") (citations omitted).

additional work performed by the Plaintiffs' counsel during the pendency of the case.  *See id.*

Generally, reasonable attorneys' fees are calculated using either the lodestar method or the "percentage of recovery" method.  *See The Mills*, 265 F.R.D. at 260.  Here, the percentage of recovery method is inappropriate because the attorneys' fees are not being deducted from the Plaintiffs' recovery.

"The starting point in the lodestar calculation is multiplying the number of hours reasonably expended by a reasonable hourly rate."  *Saman,* 2013 U.S. Dist. LEXIS 83414, at *14 (citing *Robinson v. Equifax Info. Servs., LLC,* 560 F.3d 235, 243 (4th Cir. 2009)).  In applying the lodestar method, courts consider the following 12 factors to determine if the award is reasonable.[10]

Counsel assert that Cerrato "incurred costs in an amount of $1,082.85[,] and Collective Counsel together with their staff

_____

[10] The factors are (1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awards in similar cases.  *Grissom v. The Mills Corp.*, 549 F.3d 313, 321 (4th Cir. 2008) (*citing Spell v. McDaniel,* 824 F.2d 1380, 1402 n. 18 (4th Cir. 1987)).

have collectively performed legal work for a total of 370.1 hours and incurred attorneys' fees for a total putative lodestar amount of $110,409.50." ECF No. 50 at 9.  In support of this assertion, Counsel attached a "Summary of Attorneys' Fees and Costs" that included 13 pages of billing statements.  ECF No. 50-1.  The summary also included the hours worked by each of the four Plaintiffs' attorneys, and their hourly rates.  *Id*.  The summary does not include some of the information that this Court generally uses to assess the reasonableness of counsels' hourly rates; for example, years of experience.  However, because Counsel are only requesting a fraction of their well-documented fees,[11] and this amount is not being deducted from the Plaintiffs' awards, the Court finds the award of attorneys' fees reasonable.

---

[11] The agreed upon fee amount is approximately 38.3% of the total documented fees and costs.

III. Conclusion

The Parties have demonstrated that the Settlement Agreement is fair, and the demand for attorneys' fees and costs is reasonable.  Accordingly, the Court will grant the motion.

12/16/14

William D. Quarles, Jr.
United States District Judge